**Trina DIBRILL, A Disabled Person, By Her Next Friend Annginette Wheeler, Appellant,**

v.

**NORMANDY ASSOCIATES, INC. d/b/a Normandy Nursing Center, Kerry Kaufmann, Clara Mayes and Santonio McCoy, Respondents.**

No. ED 97467.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 30, 2012.

James C. Robinson St. Louis, MO, for appellant.

Teresa D. Bartosiak, St. Louis, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Trina Dibrill (Plaintiff) by her next friend and mother, Annginette Wheeler, appeals the trial court judgment in favor of Normandy Nursing Center, Kerry Kaufmann, and Clara Mayes (Defendants). Plaintiff claims the trial court: (1) erred

by dismissing with prejudice her petition on the grounds of failure to state a claim upon which relief can be granted; and (2) abused its discretion by denying her motion for leave to amend the petition. We affirm in part and reverse in part.

### Factual and Procedural Background

On February 23, 2010, Plaintiff filed a nine-count petition against Defendants and Santonio McCoy, a former housekeeper at Normandy, seeking damages for injuries caused by McCoy's alleged rape of Plaintiff. At the time of the alleged rape, Plaintiff was a resident of Normandy Nursing Center (Normandy), defendant Kaufmann owned Normandy, and defendant Mayes was Normandy's director of nursing. In her petition, Plaintiff asserted claims of negligence, assault and battery, negligent hiring and retention, negligent supervision, false imprisonment, respondeat superior, and intentional and negligent infliction of emotional distress. Defendants filed a motion for a more definite statement and a motion to strike Plaintiff's claims for punitive damages. Before the court could rule on Defendants' motion, Plaintiff filed a first amended petition. On May 25, 2010, the trial court granted Defendants' motion for more definite statement and struck Plaintiff's claims for punitive damages.

Plaintiff filed a second amended petition on June 4, 2010 alleging actions for: negligence against Defendants and McCoy; assault and battery against McCoy; negligent hiring and retention against Defendants; negligent supervision against Defendants; false imprisonment against McCoy; respondeat superior against Defendants; and intentional infliction of emotional distress against McCoy, Kaufmann, and Mayes. In response, Defen-

dants filed a motion to dismiss Plaintiff's causes of action for negligent hiring and retention, respondeat superior, and intentional infliction of emotion distress. Defendants also filed a motion for more definite statement and motions to strike Plaintiff's claims for attorneys' fees and punitive damages. On July 22, 2010, the trial court: dismissed Plaintiff's claims for negligent hiring, negligent supervision, respondeat superior, and intentional and negligent infliction of emotion distress; struck Plaintiff's claims for punitive damages and attorneys' fees; and granted Defendants' motion for more definite statement.

On August 11, 2010, Plaintiff filed a third amended petition, to which Defendants responded with additional motions to dismiss and motions for more definite statement. On November 30, 2010, the trial court dismissed Plaintiff's third amended petition without prejudice for failure to file a healthcare affidavit.

On December 22, 2010, Plaintiff re-filed her petition stating claims for: negligence per se against Normandy, Kaufmann, and Mayes (Counts I, II, III); breach of fiduciary duty against Kaufmann and Mayes (Count IV); battery against McCoy (Count V); assault against McCoy (Count VI); negligent hiring against Defendants (Count VII); false imprisonment against McCoy (Count VIII); negligent supervision against Defendants (Count IX); respondeat superior against Defendants (Count X); and aggravating circumstances/punitive damages against Defendants and McCoy (Count XI).[1] Defendants filed a motion to dismiss all counts directed against them, and the trial court heard arguments on Defendants' motion on March 18, 2011 and April 28, 2011.

---

1. Plaintiff's petition included an additional count, also numbered Count XI, for negligent infliction of emotional distress against Kauf- mann and Mayes. As Plaintiff does not challenge the trial court's dismissal of that count, we will not address it.

On May 2, 2011, the trial court issued an order dismissing without prejudice Plaintiff's Counts I through IV, VII, and IX. With respect to Plaintiff's Count X for respondeat superior, the trial court ordered Plaintiff to file a first amended petition "in which she makes the nature of her allegations more definite and provides sufficient definiteness or particularity as to each defendant to support her theory of respondeat superior." However, the trial court dismissed with prejudice "any claim for respondeat superior based upon the conduct of Defendant Santonio McCoy. . . ." The trial court also dismissed with prejudice Plaintiff's Count XI for aggravating circumstances/punitive damages. Plaintiff filed a motion for leave to amend and a proposed first amended petition, as well as a motion to reconsider the trial court's May 2, 2011 order. On June 15, 2011, the trial court denied Plaintiff's motion for leave to amend and motion to reconsider.

Plaintiff filed a motion to amend and/or alter the trial court's judgment of June 15, 2011, and the trial court heard arguments on the motion on September 16, 2011. While Plaintiff's motion to amend and/or alter the judgment was pending, Plaintiff filed a notice of appeal. After this court issued an order to show cause, Plaintiff filed with the trial court a motion to certify the entire court file as a final order/judgment pursuant to Rule 74. After hearing arguments and receiving each party's proposed orders, the trial court issued an order on January 13, 2012 stating:

> By virtue of the Court's two rulings on May 2, 2011 and June 15, 2011 combined, the Court is now treating all Counts against Normandy Nursing Center, Kerry Kaufman [sic], and Clara Mayes as dismissed with prejudice, and is now certifying in this Order that the dismissals of all Counts against Normandy Nursing Center, Kerry Kaufman [sic], and Clara Mayes are with prejudice under Rule 74.01(a) and (b) of the Missouri Rules of Civil Procedure, and there is no just reason for delay.

Plaintiff appeals.

### Standard of Review

 Rule 55.27(a)(6) allows a defendant to file a motion to dismiss a plaintiff's petition for failure to state a claim upon which relief can be granted. Rule 55.27(a)(6); *Capitol Group, Inc. v. Collier,* 365 S.W.3d 644, 647 (Mo.App. E.D.2012). "A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition." *Bromwell v. Nixon,* 361 S.W.3d 393, 398 (Mo. banc 2012). When considering whether a petition fails to state a claim upon which relief can be granted, we review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *City of Lake Saint Louis v. City of O'Fallon,* 324 S.W.3d 756, 759 (Mo. banc 2010) (quotation omitted). In so doing, we accept as true all properly pleaded facts, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader. *Id.* Our review of a dismissal for failure to state a claim is de novo. *Miles ex rel. Miles v. Rich,* 347 S.W.3d 477, 481 (Mo.App. E.D.2011).

 We review the denial of leave to amend a petition for an abuse of discretion, and we will not disturb the trial court's decision absent a showing that the trial court palpably and obviously abused its discretion. *Zubres Radiology v. Providers Ins. Consultants,* 276 S.W.3d 335, 341–42 (Mo.App. W.D.2009) (quotation omitted). A ruling constitutes an abuse of discretion when "it is clearly against the logic of the circumstances and is so arbi-

trary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Fleddermann v. Camden County*, 294 S.W.3d 121, 126 (Mo. App. S.D.2009) (quotation omitted).

### Discussion

#### 1. Motion to Dismiss

In her first point on appeal, Plaintiff claims the trial court erred in dismissing with prejudice each count of her petition. More specifically, Plaintiff contends that her petition stated claims upon which relief can be granted and was sufficient to withstand a motion to dismiss.[2]

#### A. Negligence Per Se Claims

In her petition, Plaintiff alleged three counts of negligence per se—Count I against Normandy, Count II against Kaufmann, and Count III against Mayes. Plaintiff based her negligence per se claim against Defendant Normandy on violations of state regulations issued by the Missouri Department of Health and Senior Services pursuant to its authority under the Missouri Omnibus Nursing Home Act (ONHA). Mo.Rev.Stat. § 198.079.[3] Plaintiff based her negligence per se claims against Defendants Kaufmann and Mayes on violations of federal and state nursing home regulations.

In their motion to dismiss and in their brief, Defendants argued that Plaintiff failed to state claims for negligence per se because she "failed to allege that: 1) she is within the class of persons intended to be protected by the regulations she

cites, and 2) the injury alleged is of the nature that the regulations she cites were designed to prevent." Where, as here, the trial court did not provide reasons for its dismissal of the petition, we presume the dismissal was based on at least one of the grounds stated in the motion to dismiss, and we will affirm if dismissal was appropriate on any grounds stated therein. *Fenlon v. Union Elec. Co.*, 266 S.W.3d 852, 854 (Mo.App. E.D.2008).

"[T]he violation of a statute, which is shown to be the proximate cause of the injury, is negligence *per se.*" *Imperial Premium Fin., Inc. v. Northland Ins. Co.*, 861 S.W.2d 596, 599 (Mo.App. W.D. 1993). Negligence per se arises when the legislature pronounces in a statute what the conduct of a reasonable person must be and the court adopts the statutory standard of care to define the standard of conduct of a reasonable person. *Burns v. Frontier II Props. Ltd. P'ship*, 106 S.W.3d 1, 3 (Mo.App. E.D.2003). "When a case based on negligence per se is submitted to the jury, the standard of care is omitted because the statutory violation itself constitutes a breach of the standard of care." *Id.* at 4. In addition to legislative enactments, courts may adopt the requirements of municipal ordinances and administrative regulations "as the standard of conduct necessary to avoid liability for negligence." RESTATEMENT (SECOND) OF TORTS § 285 cmt. d (1965). To establish a claim of negligence per se, the *plaintiff* must plead the following four elements: (1) the defendant violated a statute or regulation;

---

**2.** Contrary to Plaintiff's assertion on appeal, the trial court did not dismiss with prejudice each of Plaintiff's eleven counts. The trial court's order of January 13, 2012, dismissed with prejudice only those counts against Defendants. The trial court did not dismiss Plaintiff's claims against McCoy. As a result, Plaintiff's Count V, battery; Count VI, assault; and Count VIII, false imprisonment, and

Count XI, punitive damages, remain pending against McCoy. Because the trial court did not dismiss Plaintiff's causes of action against McCoy, we need not address Plaintiff's claims of error as they relate to those counts.

**3.** All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

(2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was of the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury. *American Mortg. Inv. Co. v. Hardin–Stockton Corp.,* 671 S.W.2d 283, 294 (Mo.App. W.D.1984); *see also Sill v. Burlington Northern R.R.,* 87 S.W.3d 386, 392 (Mo.App. S.D.2002).

Missouri courts have not specifically considered whether a nursing home resident such as Plaintiff is within the class of persons intended to be protected by the cited regulations. However, in *Stiffelman v. Abrams,* 655 S.W.2d 522 (Mo. banc 1983), the Supreme Court determined that a ninety-year-old nursing home resident who was severely beaten by employees of the nursing home was protected by the provisions of the Missouri Omnibus Nursing Home Act (ONHA). *Stiffelman,* 655 S.W.2d at 531. Likewise, although Missouri courts have not expressly determined whether rape is an injury of the nature the regulations were designed to prevent, the Supreme Court was very clear in *Stiffelman* that the legislature, through the enactment of the ONHA, "intended to provide a remedy for physical and emotional abuse in the nursing home. . . ." *Id.; see also Estate of French v. Stratford House,* 333 S.W.3d 546, 562 (Tenn.2011) ("The two prerequisites for a negligence per se claim are present here: Ms. French belonged to the class of persons the federal and state nursing home regulations were designed to protect, and her injuries were the type that the regulations were designed to prevent.").

Plaintiff's petition alleged that Plaintiff was "an individual, disabled vulnerable person, residing in St. Louis County, Missouri at the Normandy Nursing Center"

and she "was unable to provide for her own health and safety as a result of severe mental retardation and cerebral palsy, which rendered her mentally and physically disabled." Plaintiff further pleaded that Defendants violated numerous regulations designed to protect residents of skilled nursing and long-term care facilities, including, *inter alia:* 19 CSR 30–88.010(22), providing that "[e]ach resident shall be free from abuse," defined as "the infliction of physical, sexual, or emotional injury or harm"; 19 CSR 30–85.042(16), providing that "[a]ll persons who have any contact with the residents in the facility shall not knowingly act or omit any duty in a manner which would materially and adversely affect the health, safety, welfare or property of resident"; 19 CSR 30–85.042(37), requiring all facilities to "employ nursing personnel in sufficient numbers and with sufficient qualifications to provide nursing and related services which enable each resident to attain or maintain the highest practicable level of physical, mental and psychosocial well-being"; 19 CSR 30–85.042(66), providing that "[e]ach resident shall receive twenty-four (24)-hour protective oversight and supervision"; and 19 CSR 30–85.042(67), providing that "[e]ach resident shall receive personal attention and nursing care in accordance with his/her condition and consistent with current acceptable nursing practices." Plaintiff further pleaded that Defendants violated their duty of care and, in so doing, "directly and proximately caused" Plaintiff to suffer the "severe, permanent and progressive injuries" caused by McCoy's physical assault and rape of Plaintiff.

██ Giving the pleadings their broadest intendment, we conclude that, contrary to Defendants' contention, Plaintiff's petition asserts facts establishing that she was a member of the class of persons the regulations were intended to protect and her

injury was of the kind the regulations were intended to prevent. Because the petition adequately pleaded causes of action for negligence per se, the trial court erred in dismissing Counts I, II, and III.

### B. Breach of Fiduciary Duty

In Count IV of her petition, Plaintiff alleged that defendants Kaufmann and Mayes breached their fiduciary duty to "protect [Plaintiff] from harm and injury." To prevail on a breach of fiduciary duty claim, a plaintiff must establish that: (1) a fiduciary duty existed between the parties; (2) the defendant breached the duty; and (3) the breach caused the plaintiff to suffer harm. *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. banc 2012). A fiduciary relationship consists of the following elements:

> (1) one party must be subservient to the dominant mind and will of the other party as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value, which are the property of the subservient party, must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 260 (Mo.App. E.D.2006). Importantly, the question of whether a fiduciary or confidential relationship exists turns on "whether or not trust is reposed with respect to property or business affairs of the other." *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 391 (Mo.App. E.D.2010); *see also Arnold v.*

*Erkmann*, 934 S.W.2d 621, 629 (Mo.App. E.D.1996) ("Things of value such as land, monies, a business, or other things of value must be possessed or managed by the dominant party.")

Plaintiff alleges that the following allegations establish that defendants Kaufmann and Mayes had a fiduciary duty to Plaintiff that they breached:

> 1. .... Plaintiff Trina Dibrill has been an individual, disabled vulnerable person, residing in St. Louis County, Missouri at the NORMANDY NURSING CENTER.

> 2. Trina Dibrill at all times relevant to this cause, was unable to provide for her own health and safety as a result of severe mental retardation and cerebral palsy, which rendered her mentally and physically disabled. Dibrill had a statutory and regulatory right to have her health, safety and well-being safeguarded, including the right to be free from sexual abuse, physical abuse and assault.

> 3. Trina Dibrill, at all times relevant to this cause was a Medicaid and or Medicare beneficiary occupying a Medicaid bed at Normandy Nursing Center.

> 4. .... Defendant Normandy Associations Inc. d/b/a/ Normandy Nursing Center ... has been a Missouri corporation operating a long term care and skilled nursing facility in the State of Missouri, representing and holding itself out to the public, and in particular to Plaintiff Trina Dibrill, as a facility specializing in providing 24 hour licensed nursing care and protective oversight to disabled adults like plaintiff Trina Dibrill in exchange for consideration in the form of contract proceeds from the State and Federal authorities, based upon plaintiff's special qualifying factors.

13. Defendants, Normandy, Kaufmann and Mayes had a fiduciary duty to protect Plaintiff from harm and injury.

60. By reason of their position of superior knowledge, authority[,] trust and/or confidence with regard to Plaintiff, Defendant[s] Kaufmann and Mayes had a fiduciary duty to Plaintiff, including a duty to protect her from harm and injury.

61. Their aforesaid acts (INCLUDED IN THE Facts and Occurrences common to all Counts section of this Petition) by Kaufmann and Mayes were in breach of their fiduciary duties to Plaintiff.

■■■ Defendants Kaufmann and Mayes moved to dismiss Plaintiff's breach of fiduciary duty claim on the grounds that Plaintiff failed to establish the existence of a fiduciary relationship. More specifically, Plaintiff did not plead that Kaufmann and Mayes had responsibility for Plaintiff's property or manipulated Plaintiff's actions. We agree that Plaintiff failed to support her breach of fiduciary duty claim with factual averments demonstrating the existence of a fiduciary relationship.[4] Because Plaintiff's allegations do not support a cause of action for breach of fiduciary duty, the trial court did not err in dismissing Count IV.

### C. Negligent Hiring and Negligent Supervision

■■■ In Counts VII and IX, Plaintiff alleged claims of negligent hiring and negligent supervision. To establish a claim for negligent hiring, a plaintiff must allege that: (1) the employer knew or should have known of the employee's dangerous proclivities; and (2) the employer's negligence was the proximate cause of the plaintiff's injuries. *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997). A claim for negligent supervision may be established in circumstances where:

A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

*Id.* at 247 (*quoting* RESTATEMENT (SECOND) OF TORTS § 317 (1965)). Both causes of action "require evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo.App. E.D.2000).

■■■ In support of her claim for negligent hiring, Plaintiff alleged that: State law required Defendants to perform pre- and post-employment background checks of McCoy; McCoy had "a criminal back-

---

4. Plaintiff argues in her appellate brief that "[b]y the very nature of Plaintiff's position as resident[,] she was an invitee to the nursing facility, and the nursing facility, by and through its officers owed to her a fiduciary duty to protect her from harm." Plaintiff cites no authority in support of the proposition that a nursing facility owes its invitees a fiduciary duty.

ground of intentional violent assault against persons"; Defendants knew or should have known that McCoy had "dangerous proclivities of violent felonious assault against persons"; Defendants knew or should have known that McCoy's violent proclivities "would result in this individual engaging in violent criminal acts against Normandy Nursing Center residents"; and Defendants' negligence in hiring McCoy "set in motion the sequence of events that proximately caused" Plaintiff's injuries, including "physical pain, serious physical injuries to her face and mouth, areas in and around her vaginal regional region [sic] and her rectal region, emotional distress and mental anguish." In regard to her claim for negligent supervision, Plaintiff re-pleaded the above facts and further alleged that Defendants owed a duty of care to Plaintiff to protect her from physical assault, abuse and sexual battery by Normandy employees. Plaintiff also alleged that defendants Kaufmann and Mayes breached their duties to Plaintiff by failing to: register McCoy with the DHSS Registry as required by Section 210.900; monitor, investigate, and supervise McCoy's interactions with Plaintiff; and educate and/or warn McCoy "of the requirements not to harm residents." Taking all the allegations in Plaintiff's petition to be true and giving Plaintiff all reasonable inferences, we conclude that Plaintiff pleaded sufficient facts to survive a motion to dismiss. *See, e.g., Gaines v. Monsanto Co.,* 655 S.W.2d 568, 571–72 (Mo.App. E.D.1983).

Defendants moved to dismiss Plaintiff's claims of negligent hiring and negligent supervision on the grounds that Plaintiff "failed to allege a *particular* dangerous proclivity of McCoy or that his alleged misconduct was consistent with a *particular* dangerous proclivity." (emphasis original). More specifically, Defendants argued that Plaintiff failed to identify a particular proclivity or background consistent with the alleged sexual assault. In support of this argument, Defendants rely on *Reed v. Kelly,* 37 S.W.3d 274 (Mo.App. E.D.2001). In *Reed,* the plaintiff brought an action against the employee, an armed security guard, and his employer to recover damages she suffered when the employee falsely imprisoned and sexually touched her. 37 S.W.3d at 276. The plaintiff's actions against the employer were based on negligent hiring, negligent retention, and negligent supervision. *Id.* This court affirmed the trial court's grant of summary judgment for employer on the plaintiff's negligent hiring claim because employer's prior acts of misconduct—which involved slapping his wife and a physical altercation with a co-worker—did not "put him at risk to commit the sexual offense on plaintiff" such that the employer could be liable for negligent hiring. *Id.* at 277. This court also affirmed summary judgment for the employer on the plaintiff's negligent retention and negligent supervision claims because the combination of the employee's pre-employment assaults and a sexually harassing comment he made during his employment did not "put employer on notice that [the employee] had dangerous sexual propensities that it would be foreseeable that [the employee] would sexually assault a building visitor." *Id.* at 278; *see also Stubbs v. Panek,* 829 S.W.2d 544, 548 (Mo.App. W.D.1992) (affirming summary judgment on claims of negligent hiring and negligent retention because employee's pending charge for petty larceny, conviction for illegal trash dumping, and dropped charge of child abuse did not suggest dangerous proclivities that would make the employee a risk to abduct, assault, and a murder a child); *Butler v. Hurlbut,* 826 S.W.2d 90, 93 (Mo.App. E.D.1992) (affirming entry of

judgment notwithstanding the verdict because employee's prior convictions for unlawful use of a weapon, illegal possession of a controlled substance, and carrying a concealed weapon did not evidence dangerous proclivities consistent with employee's act of murdering a customer).

 Although factually similar, *Reed* is procedurally distinguishable from the instant case. *Reed* was decided on a motion for summary judgment. By contrast, here the trial court dismissed Plaintiff's case for failure to state a claim. Whether the nature of McCoy's criminal history was such that Defendants knew or should have known that McCoy had the particular dangerous proclivity of beating and sexually assaulting a nursing home resident is a fact issue that cannot be resolved on a motion to dismiss for failure to state a claim. "Matters of foreseeability and proximate cause must be left for the court and jury after presentation of evidence." *Gaines*, 655 S.W.2d at 571. We therefore conclude that this consideration was not appropriate on a motion to dismiss and Plaintiff sufficiently pleaded facts establishing the elements of negligent hiring and negligent supervision.[5]

## D. Respondeat Superior

 Plaintiff also argues that the trial court erred in dismissing with prejudice Count X, alleging respondeat superior.[6] Contrary to Plaintiff's assertion, the trial court did not dismiss Plaintiff's Count X. Rather, the trial court ordered Plaintiff to file a first amended petition "in which she makes the nature of her allegations more definite and provides sufficient definiteness or particularity as to each defendant to support her theory of respondeat superior." The trial court did, however, dismiss with prejudice "any claim for respondeat superior based upon the conduct of Defendant Santonio McCoy...." Because Plaintiff's point on appeal challenges only the trial court's dismissal of her claim that Defendants were liable for McCoy's rape of Plaintiff, we limit our discussion to this issue.[7]

 Under the doctrine of respondeat superior, an employer is liable for the misconduct of an employee where that employee is acting within the course and scope of his employment. *State ex rel. Green v. Neill,* 127 S.W.3d 677, 678–79 (Mo. banc 2004). An act is within the course and scope of employment if: (1)

---

**5.** We note that Defendants Kaufmann and Mayes have not challenged Plaintiff's claims for negligent hiring and negligent supervision on the basis that, as individuals, they are not appropriate defendants with respect to these causes of action.

**6.** Respondeat superior is not a cause of action but rather a theory under which an employer is held responsible for the misconduct of a employee where that employee is acting within the course and scope of his employment. *See State ex rel. Green v. Neill,* 127 S.W.3d 677, 678–79 (Mo. banc 2004). Although Plaintiff titles her claim "respondeat superior," Count X is more accurately described as a claim that Defendants are liable for McCoy's intentional torts against Plaintiff under the theory of respondeat superior.

**7.** Plaintiff brought her claims for respondeat superior against all three defendants. The proper defendant in an action based on a theory of respondeat superior is the employer. *See, e.g., Papa John's USA, Inc. v. Allstate Ins. Co.,* 366 S.W.3d 116, 120 (Mo.App. W.D.2012) ("Respondeat superior imposes vicarious liability on employers for the negligent acts or omissions of employees or agents...."). Plaintiff's petition did not allege that the individual defendants, Kaufmann and Mayes, were McCoy's employers. Because we affirm the dismissal of Plaintiff's respondeat superior claim as to all three defendants based on the absence of sufficient factual allegations relating to "course and scope," we do not further consider whether Defendants Kaufmann and Mayes were appropriate defendants in their individual capacities.

even though not specifically authorized, it is done to further the business or interests of the employer under his "general authority and direction" and (2) it naturally arises from the performance of the employer's work. *Daugherty v. Allee's Sports Bar & Grill,* 260 S.W.3d 869, 872–73 (Mo.App. W.D.2008); *see also Cluck v. Union Pac. R.R. Co.,* 367 S.W.3d 25, 29 (Mo. banc 2012). "If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business." *P.S. v. Psychiatric Coverage Ltd.,* 887 S.W.2d 622, 624 (Mo.App. E.D. 1994).

 In the fact section of her petition, Plaintiff alleged that, at the time McCoy assaulted her, McCoy was "an on-duty employee, functioning in the course and scope of his employment for Normandy." However, Plaintiff does not allege that McCoy committed the alleged rape "in furtherance of" Defendants' business or interests. *Cf. Young v. Stensrude,* 664 S.W.2d 263, 266 (Mo.App. E.D.1984) (holding that plaintiff sufficiently pleaded that employer should be vicariously liable for employee's intentional tort where plaintiff pleaded that those acts "occurred during a business meeting and were in furtherance of the [defendants'] purposes."); *Scott v. St. Louis–San Francisco Ry. Co.,* 52 S.W.2d 459, 460–61 (Mo.App.1932) (holding that petition stated a cause of action based on the theory of respondeat superior

where plaintiff alleged that defendant's employee "while in pursuit of his said employment and in furtherance thereof, unlawfully and wantonly struck plaintiff"). Furthermore, Plaintiff pleads no factual allegations supporting her conclusory allegation that McCoy was acting in the course and scope of his employment at the time of the alleged rape. *See, e.g., Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor–Morley, Inc.,* 146 S.W.3d 411, 418 (Mo.App. E.D. 2004) (holding the plaintiff's allegation that subcontractor "acted 'on behalf' of [the defendant, general contractor] is merely a conclusory statement; it does not allege facts that, if true, establish agency or respondeat superior."). When reviewing a dismissal for failure to state a claim, we disregard conclusory allegations that are not supported by the facts. *Miles ex rel. Miles v. Rich,* 347 S.W.3d 477, 481 (Mo. App. E.D.2011). We therefore conclude that the trial court did not err in dismissing with prejudice Plaintiff's claim that Defendants were vicariously liable for the injuries McCoy caused Plaintiff.

### E. Punitive Damages

Finally, Plaintiff contends that the trial court erred in dismissing with prejudice her claim for punitive damages contained in Count XI of the petition. Plaintiff and Defendants agree that Section 538.210.5 governs punitive damages in this case.[8] Chapter 538 imposes limitations on traditional tort causes of action against health care providers.[9] *J.K.M. v. Dempsey,* 317

---

8. Given the parties' agreement, we have not been asked to resolve, and are therefore not resolving, whether all of the causes of action in this case with respect to the various defendants are governed by Section 538.210. We note, however, that Section 538.210 governs causes of action only where the "true claim" sounds in medical malpractice. *Devitre v. Orthopedic Ctr. of St. Louis LLC,* 349 S.W.3d 327, 334 (Mo. banc 2011).

9. Section 538.205(4) defines the term "health care provider" to include:
 [A]ny physician, hospital, health maintenance organization, ambulatory surgical

center, long-term care facility including those licensed under chapter 198, RSMo, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate.
Mo.Rev.Stat. § 538.205(4). "Health care services" are defined as:
 [A]ny services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or,

S.W.3d 621, 625 (Mo.App. S.D.2010). Under Section 538.210.5, an award of punitive damages against a health care provider "shall be made only upon a showing by a plaintiff that the health care provider demonstrated willful, wanton or malicious misconduct with respect to his actions which are found to have injured or caused or contributed to cause the damages claimed in the petition." Mo.Rev.Stat. § 538.210.5.

 Punitive damages must be pleaded and proved. *City of Greenwood v. Martin Marietta Materials, Inc.*, 299 S.W.3d 606, 627 (Mo.App. W.D.2009). While the request for punitive damages need not be pleaded in a separate count, "it must nevertheless appear from the complaint, either by direct averment or from necessary inference, that the act occasioning the damages was done maliciously or was the result of the willful misconduct of the defendant . . . ." *Id.* (*quoting Bower v. Hog Builders, Inc.*, 461 S.W.2d 784, 798 (Mo.1970)). Accordingly, to state a claim for punitive damages against a health care provider, a plaintiff's petition must allege facts indicating the defendant willfully, wantonly, or maliciously injured the plaintiff by its tortious act.

 Plaintiff's petition asked for punitive damages and asserted that Defendants failed to: protect her from harm or injury; maintain adequate staffing and oversight; supervise and train employees; and perform an adequate pre-employment background screening and periodic post-employment background checks on McCoy. Plaintiff further alleged that these acts were "willful, wanton, malicious and outrageous because of Kaufmann's

and Mayes's reckless indifference to Plaintiffs rights and or [sic] showed Kaufmann's and Mayes's complete indifference to or conscious disregard for Plaintiff's safety."

Liberally granting Plaintiff all favorable inferences from her pleading, the petition provided sufficient facts to demonstrate that the wrongful acts complained of were done willfully, wantonly, or maliciously. We find that the facts, coupled with the allegation that such entitled Plaintiff to punitive damages, fairly informed Defendants of the nature of the demand. *See, e.g., City of Greenwood*, 299 S.W.3d at 627. We therefore conclude that the trial court erred in dismissing for failure to state a claim Plaintiff's request for punitive damages. Point I is granted in part and denied in part.

## 2. Motion for Leave to Amend Petition

In her second point on appeal, Plaintiff claims the trial court abused its discretion in denying her leave to amend her petition. Specifically, Plaintiff contends that her proposed first amended petition included factual allegations that were not available at the time of the initial filing, the amendment was timely and would not have prejudiced Defendants, and the trial court's denial of her motion for leave to amend prevented her from pursuing a valid cause of action.

Because we reverse the trial court's dismissal of Plaintiff's claims of negligence per se (Counts I, II, and III), negligent hiring (Count VII), negligent supervision (Count IX), and punitive damages (Count XI) we need not address Plaintiff's contention that the trial court should have al-

if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant

to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized.

Mo.Rev.Stat. § 538.205(5).

lowed her the opportunity to amend those counts. *See, e.g., Hamdan v. Bd. of Police Comm'rs for the City of St. Louis*, 37 S.W.3d 397, 400 (Mo.App. E.D.2001). We therefore limit our discussion to the trial court's refusal to allow Plaintiff to amend her claims of breach of fiduciary duty (Count IV) and respondeat superior (Count X). We also consider Plaintiff's effort to introduce two additional counts—for negligence and breach of contract—in her proposed first amended petition.

Rule 67.06 provides that "[o]n sustaining a motion to dismiss a claim . . . the court shall freely grant leave to amend." Rule 67.06. Similarly, Rule 55.33(a) states that leave to amend a pleading "shall be freely given when justice so requires." Rule 55.33(a). While both rules stress liberality in permitting amendments to pleadings, they do not confer an absolute right to file even a first amended petition. *Moore v. Firstar Bank*, 96 S.W.3d 898, 903 (Mo.App. S.D.2003). "Denial of leave to amend is within the sound discretion of the trial court, and its decision will not be disturbed unless there is a showing that such court palpably and obviously abused its discretion." *Id.* (quotation omitted).

To determine whether to grant leave to amend a petition, courts consider: "the reasons for the moving party's failure to include the matter in the original proceedings; whether there is any prejudice to the non-moving party; and whether there will be hardship to the party requesting amendment if the request is denied." *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 624 (Mo.App. E.D.2001). As the recognized purpose of allowing amendments to pleadings is to allow a party to present evidence that was overlooked or unknown when the original pleading was filed, "[a]ppellate courts have found no abuse of dis-

cretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed." *Moore*, 96 S.W.3d at 904.

Plaintiff's proposed amendments to Counts IV and X and her added counts of negligence and breach of contract, do not present any new facts or circumstances that she could not have raised earlier. *See, e.g., Trans World Airlines*, 58 S.W.3d at 624. Plaintiff's new and amended claims are based entirely on the facts and allegations contained in her original petition. Moreover, Plaintiff failed to show any reason why the proposed allegations and causes of action were not included in the original petition. "There is no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed." *Tisch v. DST Systems, Inc.*, 368 S.W.3d 245, 258 (Mo.App. W.D.2012). We therefore conclude that the trial court did not abuse its discretion in denying Plaintiff's motion for leave to amend her petition. Point denied.

### Conclusion

The judgment of the trial court is affirmed in part and reversed in part.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.